IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. ___ |
| | ) | |
| LAMARR RENEA PITTMAN | ) | |
| | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL
COMPLAINT AND ARREST WARRANT**

I, Jeffrey S. Meixner, having been duly sworn, depose and state as follows:

1.   Your affiant in this matter is Special Agent (SA) Jeffrey Meixner of the Bureau of

Alcohol, Tobacco, Firearms and Explosives (ATF) is currently assigned to Group I of the

Washington Field Division. I have been a Federal Law Enforcement Officer with the United

States Government for approximately nine years, during my tenure as a Federal Law

Enforcement Officer in Washington, D.C., and the surrounding metropolitan area, I have taken

part in over 100 federal and local criminal investigations involving the use, possession and

transfer of firearms, and narcotics related investigations.  I have attended a number of schools

and training venues hosted by ATF, HIDTA, and the Federal Law Enforcement Training Center

dealing in various techniques of investigating crimes involving firearms and narcotic related

offenses.

2.  This affidavit is submitted in support of a criminal complaint and arrest warrant charging

LAMARR RENEA PITTMAN with conspiracy to provide false statements to a Federal firearms

licensee during the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 371.

3.  The facts and information in this affidavit are based upon the observations and

knowledge of law enforcement officers involved in this investigation.  This application contains

information necessary to support probable cause for this application and is not intended to include

each and every fact and matter observed by me or known to the government.

4.  On or about August 4, 2005, Metropolitan Police Department Interdiction Unit was

conducting interdiction operations at the Greyhound bus terminal located at 1005 First Street,

N.E., Washington, D.C.  Officer Alvarado and Officer Dino McFadden spoke with Darick

NAPPER (B/M, XXXXXXXX, SSN# XXXXXXX, FBI# 8582RB3, MPD PDID# 481-426) on

the sidewalk area adjacent to the bus terminal.   NAPPER consented to a search of his bag.

5.  A search of NAPPER's bag resulted in the discovery of a box of 37 rounds of 9mm

ammunition.  NAPPER was placed under arrest.  A further search of NAPPER's person revealed

Ruger , 9mm, pistol, Model P-95, SN# 315-49642 loaded with 10 rounds of ammunition,  a

black holster, firearms magazine loaded with 10 rounds of ammunition, four additional rounds of

ammunition, 43 ziplock bags of crack cocaine, one ziploc bag of marijuana, and $591.72 in U.S.

Currency.  A search of NAPPER's bag revealed a Hipoint, .380 caliber, Model CF380 pistol,

SN# P908333, loaded with eight rounds of ammunition, one PAI body armor vest, digital scale,

black face mask, black ski mask, 23 ziploc bags.

6.  On or about August 16, 2005, a firearms trace request was submitted to the ATF National

Tracing Center for both of the recovered firearms.   According to firearms trace results, the Ruger pistol

was purchased on or about April 2, 2005, by PITTMAN, Lamarra Rene (B/F, XXXXXX, SSN#

XXXXXXX) from American Jewelry & Pawn inc. of Nash County, North Carolina T20050171133.

7.  On or about September 20, 2005 at approximately 1500 hrs, ATF Special Agent (SAs) Jeffrey Meixner and William Tuveson visited the residence of Lamarr Renea PITTMAN (B/F, XXXXXX, SSN: XXXXXXX) located at 206 Beet Lane, Scotland Neck, North Carolina. PITTMAN stated that she moved to Washington, D.C. on or about August 15, 2004 to live with her father at 317 Todd Place, N.E., Washington, D.C. In September, 2004, PITTMAN met an individual known to her as Darrick NAPPER.  PITTMAN dated NAPPER off and on through March, 2005.  PITTMAN stated that sometime between February and March, 2005, NAPPER asked her if she had a gun permit or knew anyone or anyplace that sells firearms in North Carolina.

8.  On or about April 1, 2005, NAPPER and PITTMAN traveled from Washington, D.C. to North Carolina. While enroute to North Carolina, NAPPER and PITTMAN discussed how PITTMAN would purchase a firearm for NAPPER because NAPPER had felony charges on his record, and that he was a felon.  While NAPPER was at her mother's house in Scotland Neck, North Carolina, PITTMAN looked in the yellow pages and found a pawn shop that sold firearms.  On or about Saturday evening, April 2, 2005, NAPPER, PITTMAN, and PITTMAN's friend Ronnetta WHITAKER (B/F, XXXXXXX, SSN# XXXXXXXX) visited the American Jewelry & Pawn Shop located in Rocky Mount, North Carolina.

9.  While inside the pawn shop, NAPPER showed PITTMAN the firearms that he wanted PITTMAN to purchase.  PITTMAN stated that NAPPER whispered things to PITTMAN to ask the salesmen and then asked a few questions himself.  PITTMAN stated that NAPPER and

WHITAKER stepped outside the store and PITTMAN remained inside the store to purchase the firearms.  NAPPER gave WHITAKER $300-$400, WHITAKER came back into the store with the money that NAPPER had given her to give to PITTMAN to purchase the firearms. PITTMAN stated that she completed the firearm purchase paperwork, purchased the firearms, two boxes of ammunition, and took the firearms out of the store to her car where she placed them in the trunk.   PITTMAN stated that on or about April 3, 2005, PITTMAN drove NAPPER back to Washington, D.C.  PITTMAN stated that she drove NAPPER to an apartment building in Washington, D.C. where NAPPER removed the firearms from the car and took them inside the building.

10.  PITTMAN stated that approximately two to four weeks later, NAPPER and PITTMAN drove back to North Carolina, and visited three or four pawn shops in the Fayetteville area.  PITTMAN stated at one of the pawn shops NAPPER showed her which firearm he wanted her to purchase.  PITTMAN stated that NAPPER provided her with the money to purchase the firearm, body armor, and ammunition.   PITTMAN stated that the next day PITTMAN drove NAPPER back to Washington, D.C. with the firearm, body armor, and ammunition. Based on the foregoing, there is probable cause to believe that from in or about February 2005 through on or about May, 2005., within the District of Columbia and elsewhere, the defendant, LAMARR RENEA PITTMAN, did unlawfully, knowingly and intentionally conspire to provide false statements to a Federal firearms licensee during the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 371.

_____
Jeffrey S. Meixner
Special Agent

Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to and subscribed before me this _____ day of March, 2006.


_____
The Honorable
United States Magistrate Judge